JUDGE FRANKLIN D. BURGESS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  CR03-0498 FDB |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPLY TO GOVERNMENT'S |
| vs. | ) | RESPONSE TO DEFENDANT'S |
| | ) | MOTION TO DISMISS INDICTMENT |
| GARY EVANS JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## I.   INTRODUCTION.

Important Constitutional issues are before the Court.  The Government has emphasized the "heinous" nature of illicit sexual acts committed in Cambodia to justify this prosecution.  While dismissal of this action might be an unpopular act, it is necessary in order to uphold the  United States Constitution and the Supreme Court's opinions detailing the important limitations on Federal Congressional power.  The Government presents numerous confusing and at times conflicting arguments.  However, at bottom, to uphold 18 U.S.C. § 2423(c) based on the Government's Response to Defendant's Motion to Dismiss Indictment ("Government's Response") this Court would have to:  Disregard the plain language of the statute; Find that Congress has limitless

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 1

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1   power to regulate the acts of American citizen in foreign countries;  Find that the Foreign

2   Commerce Clause grants Congress plenary police powers regardless of whether a

3   foreign commerce nexus exists;  Find that Congress has the power to criminalize acts in

4   foreign countries of American citizens who last traveled in foreign commerce at a remote

5   time notwithstanding violations of the Due Process Clause and the Ex Post Facto Clause;

6   And find that Congress has the power to criminalize acts in foreign countries of

7   American citizens regardless of whether that may be in conflict with the law of other

8   countries or international law.

9        The fundamental question before the Court is whether there is a constitutional

10   basis to deem Mr. Jackson's acts a *federal* crime.  Mr. Jackson's conduct in Cambodia in

11   and of itself is not a *federal* crime. He last traveled in foreign commerce in 2001 when he

12   left the United States for good.  His travel in 2001 was lawful and had nothing to do with

13   the instrumentalities, channels or goods involved in interstate or foreign commerce.  He

14   has been charged with a statute that regulates his conduct in Cambodia, not travel in

15   foreign commerce.  It is the Court's duty "to say what the law is," Marbury v. Madison,

16   1 Cranch 137, 177 (1803) and to uphold the rule that Congress does not possess

17   unlimited power to enact whatever legislation it desires.  This Court must dismiss this

18   prosecution.

19   **II.   UNDER CONTROLLING SUPREME COURT PRECEDENT,
         CONGRESS'S REGULATORY AUTHORITY UNDER THE COMMERCE
20       CLAUSE IS NOT "WITHOUT EFFECTIVE BOUNDS."  WITH § 2423(C),
         CONGRESS HAS GONE BEYOND ITS AUTHORITY TO *REGULATE*
21       COMMERCE, AND IS INSTEAD ENGAGED IN FIGHTING CRIMES,
         WHICH HAVE NOTHING TO DO WITH FOREIGN COMMERCE.**

22       **A.   Section 2423(c) is Unconstitutional As Applied Because it is Not
              Directed at Protecting the Channels of Foreign Commerce.**
23

24   The government acknowledges that § 2423(c) extends the "reach of prior statutes

25

26

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 2

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1   to criminalize acts taking place entirely outside of the United States"[1] and that the statute

2   does not seek to punish those "who travel in foreign commerce."[2]  But it asserts

3   nonetheless that Congress has authority to federally criminalize such acts under its

4   power to regulate the channels of foreign commerce.

5        In support, it cites to circuit case law upholding regulations, which unlike here,

6   prohibit conduct directly injuring or obstructing the federal commerce channels or

7   involving the transportation of categories of goods across state or foreign lines through

8   those channels.  But it does not address the crucial distinction at the heart of this case.

9   Whether § 2423(c), a regulation, which does not purport to protect the channels of

10  commerce can be constitutionally validated as a permissible "channels" regulation.  The

11  case law makes clear that absent such focus,  no constitutional basis under the

12  Commerce Clause exists.  See Gibbons v. Ogden, 9 Wheat 1, 194 (1824) (The power of

13  Congress over commerce is "the power to regulate; that is, to prescribe the rule by which

14  commerce is to be governed.").

15       Section 2423(c) contains a jurisdictional element requiring that the government

16  prove a defendant "travels in foreign commerce."  Jurisdictional elements are inserted

17  into statutes to ensure that what the defendant did was within the power of Congress to

18  regulate.  United States v. Rodia, 194 F.3d 465, 473 (3d Cir. 1999); see also United

19  States v. McCoy, 323 F.3d 1114, 1126 (9th Cir. 2003) (Court held that the jurisdictional

20  element "provide[d] no support for the government's assertion of federal jurisdiction"

21  recognizing that just because certain elements of an object have traveled interstate at one

22  time or another does not mean Congress can regulate that object under the Commerce

23  Clause).  Here, the element "travels in foreign commerce" signals Congress's attempt to

24

_____

25      [1] Government's Response at 1-2.

26      [2] Government's Response at 17.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1  regulate the use of the channels of commerce but it is constitutionally deficient for two

2  reasons.

3        First the statute does not require the misuse of the channels of commerce.  The

4  statute does not require that a defendant travel in foreign commerce with the "purpose"

5  or intent of engaging in a crime.  See e.g., 18 U.S.C. 2423 (b) (making it a crime for

6  citizens "who travels in foreign commerce, for the purpose of engaging in any illicit

7  sexual conduct.").  Rather, the statute regulates lawful travel.

8        Second, the statute does not ensure that there exist a nexus between the criminal

9  conduct and foreign commerce.  In Lopez v. United States, 514 U.S. 549 (1995) the

10  Court explained that there are two kinds of permissible regulation under the "channels"

11  category: (1) "regulation of the use of the channels of interstate commerce;" and (2) "an

12  attempt to prohibit the interstate transportation of a commodity though the channels of

13  commerce."  Id. at 559; see also N. Am. Co. v. SEC, 327 U.S. 586 (1946) ("Congress

14  may impose relevant conditions and requirements on those who use the channels of

15  interstate commerce in order that those channels will not become the means of promoting

16  or spreading evil, whether of a physical, moral or economic nature"); United States v.

17  Schaffner, 258 F.3d 675, 680 (7th Cir. 2001) ("Examples of activity falling within

18  [channels] category one include the shipment of stolen goods, kidnaped persons,

19  prostitutes and guns.").  Section 2423(c), which the government concedes does not

20  regulate or place any conditions on persons who travel in foreign commerce but rather

21  seeks "to punish illicit sexual conduct in foreign places"[3] addresses neither.

22        The circuit court "channels" cases all involve statutes which fall within one of the

23  two permissible categories of channel regulation.  United States v. Bredimus, 352 F.3d

24  200 (5th Cir. 2003), reh'g & reh'g en banc denied by __ F.3d __ (5th Cir. Jan. 7, 2004)

25

26        [3] Government's Response at 17.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1   (addressing 18 U.S.C. § 2423(b)), <u>United States v. Han</u>, 230 F.3d 560 (2d Cir. 2000)

2   (addressing 18 U.S.C.§ 2423(b)), <u>United States v. Cummings</u>, 281 F.3d 1046 (9th Cir.

3   2002)  (addressing the International Kidnaping Act); and <u>United States v. Shahani-

4   Jahromi</u>, 286 F. Supp. 2d 723 (E.D. Va. 2003) (same) addressed the first kind of

5   channels regulation – the active misuse or impediment to the use of the channels of

6   commerce.[4]

7          <u>United States v. Rambo</u>, 74 F.3d 948 (9th Cir. 1995), which the government cites

8   at page 9 of its Response, involved the second kind of permissible channels regulation.

9   The Ninth Circuit found that 18 U.S.C. § 922(o), a regulation prohibiting the possession

10  or transfer of machine guns, was constitutionally valid as a channels category of

11  regulation because it is an "'attempt to prohibit the interstate transportation of a

12  commodity [machine guns] through the channels of commerce.'" <u>Id.</u> at 952 (<u>quoting

13  Lopez</u>, 514 U.S. at 559).

14         Finally, the government cites to <u>United States v. Thomas</u>, 893 F.2d 1066 (9th

15  Cir.), <u>cert</u>. <u>denied</u>, 498 U.S. 826 (1990), stating that "the appellate court held that the

16  extraterritorial application of the child pornography production statute . . . was within

17  Congress' power under the commerce clause."  Government's Response at 11.  <u>Thomas</u>

18  is not on point.  The government has confused the separate concepts of extraterritorial

19  jurisdiction, whether a statute may lawfully be *applied* extraterritorially, and the

20  constitutionality of the statute, whether Congress had commerce clause authority to enact

21  the statute in the first instance.  Thomas did not challenge the constitutionality of the

22  child pornography statute, which proscribes the transportation, mailing, and receipt of

23  child pornography in the United States, arguing instead that the statute could not be

24  applied extraterritoriality because he took the photos in Mexico.  <u>Id.</u> at 1068-69.  The

25

26         [4] <u>See</u> Jackson's Motion to Dismiss at 10-13 for discussion of these cases.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1   Court upheld the extraterritorial application of 18 U.S.C. § 2251(a) to Thomas noting he

2   brought the photos into the United States. Id. at 1068. Given the activities targeted by

3   this statute–mailing and transportation of child pornography through the channels of

4   foreign commerce–the statute was not vulnerable to a channels of commerce

5   constitutional challenge.

6         No Court has upheld a federal statute, promulgated under the Commerce Clause,

7   which, as here, is not directed at proscribing the misuse or obstruction to the use the

8   channels of commerce. See e.g., United States v. Schaffner, 258 F.3d 675, 680 (7th Cir.

9   2001) (Congress may prohibit the movement of child porn in interstate commerce to

10   prevent the spread of injurious or immoral uses). As Lopez reminded the Courts,

11   Congress's Commerce power is not limitless. If § 2423(c) were allowed to stand, **all**

12   criminal conduct outside United States territory committed by a citizen or permanent

13   resident would be subject to federal jurisdiction because those individuals must

14   necessarily have once traveled. Cf., United States v. Stewart, 348 F.3d 1132,1135 (9th

15   Cir. 2003) (rejected argument that because machinegun parts moved in interstate

16   commerce, jurisdictional element met, stating that "[a]t some level, of course, everything

17   we own is composed of something that once traveled in commerce. This cannot mean

18   that everything is subject to federal regulation under the Commerce Clause, else that

19   constitutional limitation would be entirely meaningless."). All criminal conduct outside

20   the United States would be subject to federal jurisdiction regardless of whether the

21   channels of commerce had been misused or obstructed. The limits placed on Congress

22   by the Constitution would evaporate. Rather than having a federal government based on

23   powers enumerated and limited by the Constitution, this country would have a federal

24   government with the power to enact whatever laws it so desires. This Court must

25   dismiss this prosecution.

26

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

**B.     Section 2423(c) Also Cannot Be Upheld Under the Substantial Affects Prong.**

Section 2423(c) provides for travel in foreign commerce as the only basis for federal jurisdiction.  Thus, the statute is not properly considered under the substantial affects prong.  See Jones v. United States, 529 U.S. 848 (2000) (there is a "recognized distinction between legislation limited to activities 'in commerce' and legislation invoking Congress' full power over activity substantially 'affecting commerce.'");  Russell v. United States, 471 U.S. 858, 859 (1985) (locution "affecting interstate or foreign commerce" in 18 U.S.C. § 844(I) "expresses an intent by Congress to exercise it full power under the Commerce Clause.");  see also United States v. Robertson, 514 U.S. 669, 671 (1995) (per curiam) (emphasis added) (the Supreme Court made clear that the "'affecting commerce' test was developed . . . to define the extent of Congress' power over purely *intrastate* commercial activities that nonetheless have substantial interstate effects); Schaffner, 258 F.3d at 682 (declined to analyze statute prohibiting transporting child porn under "substantial affects" category because the criminal activity necessarily involves the interstate movement of the pornographic material and therefore is properly analyzed under the channels and "things" in commerce categories).

Had Congress intended the statute to be promulgated under the substantial affects prong of the Commerce Clause, it would have so stated by inserting language evidencing that intent.  See e.g., § 922(g) ("it shall be unlawful for any person . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce.") (emphasis added).  The Government's arguments that this Court may rely on the "substantially affects" prong of the Commerce Clause is thus misguided.  That prong cannot be considered to uphold the statute.

Moreover, the gun cases cited to by the government, which have been upheld under the "substantial affects" prong do not support application of this prong here.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 7

1   These statutes specifically contain the element of "in commerce or affecting commerce."

2   In other words, the statutes contain a jurisdictional element that ensures a sufficient

3   interstate nexus to justify federal proscription.  See e.g., United States v. Bass, 404 U.S.

4   336 (1971) (upholding statute which proscribes receipt by, among others, a felon of any

5   firearm "in commerce or affecting commerce after concluding necessary interstate nexus

6   existed).  The Government's claim that there is a "substantial link" between Mr.

7   Jackson's travel and activity in Cambodia is unsupported and misleading.  Mr. Jackson

8   last traveled in foreign commerce in 2001.  There is no link between his travel in foreign

9   commerce and his conduct in 2003.  The Government's claim that he abused children on

10   June 27, 2003. after arriving back in Phnom Penh misleadingly implies that he had just

11   traveled in foreign commerce.  The Government's implication is incorrect and should be

12   disregarded. Mr. Jackson did not just travel in foreign commerce.  It is indisputable that

13   his last travel in foreign commerce last occurred in 2001 when he left the United States.

14   The Government also claims that the fact Mr. Jackson received a small pension is a

15   "substantial link."  This is nonsense.  There is no link between this small pension and

16   Mr. Jackson's travel in foreign commerce in 2001.  There is no link between his small

17   pension and any foreign commerce.  Acceptance of the Government's argument that this

18   constitutes a "substantial link" would lead to an absurd result.  Under the Government's

19   theory, if receiving U.S. funds is a "substantial link," the foreign commerce would be

20   substantially affected regardless of whether a citizen had traveled in foreign commerce.

21          Further, unlike § 2423(c), gun regulations regulate a commercial commodity,

22   guns, that are manufactured in and travel through interstate and foreign commerce.  See

23   Stewart, 348 F.3d at 1139-40; see also United States v. Franklyn, 157 F.3d 90, 94 (1998)

24   (Section 922(o) is integral to a larger federal scheme for the regulation of trafficking in

25   firearms–an economic activity with strong interstate effects).

26

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1      Moreover, although the government mentions the Supreme Court's four-part test

2  set forth in Morrison, supra, for determining whether a law regulates an activity that has

3  a substantial effect on commerce, it does not analyze the statute under this test.  In

4  Morrison, the Supreme Court set out the controlling test for determining whether a

5  regulated activity "substantially affects" commerce: (1) whether the prohibited activity is

6  commercial or economic in nature; (2) whether there is an express jurisdictional element

7  involving interstate activity that might limit the statute's reach; (3) whether Congress has

8  made findings about the effects of the prohibited conduct on interstate commerce; and

9  (4) whether the link between the prohibited activity and the effect on interstate

10  commerce is attenuated.[5]  Id. at 610-12.  The Ninth Circuit has instructed that the first

11  (whether the activity is economic) and fourth (whether the effect of the activity is

12  attenuated) prongs are the most important.  See McCoy, 323 F.3d at 1119.

13      Thus, even assuming that § 2423(c) is properly analyzed under this third category,

14  this criminal statute, which has nothing to do with foreign commerce or any kind of

15  economic enterprise, and which criminalizes conduct against foreign minors that has no

16  significant affect on foreign commerce cannot be sustained under this third category.

17  See Lopez, 529 U.S. at 564 (Court rejected argument that violent crime substantially

18

19 _____

20      [5] Despite the fact that the government also takes the position that there need be no link
   between the travel and the illicit sex act, it argues that "there is a substantial link in this case

21  between Jackson's travel in foreign commerce and the illicit sexual activity occurring in a
   foreign country" because within months of arriving back in Phnom Penh he committed the illicit

22  acts. Government's Response at 12. This argument gives a misleading impression that the acts
   were committed immediately after  travel in foreign commerce where in fact that did not

23  occur. Notwithstanding that the relevant question under Morrison is whether the prohibited
   activity substantially affected interstate or foreign commerce, Mr. Jackson moved from the

24  United States to Southeast Asia in November of 2001 and did not return to the United States
   until his expulsion.  The indictment charges Mr. Jackson with traveling "from in or about

25  January 2002 [the date he went from Thailand to Cambodia]."  That he may have traveled
   within Southeast Asia using foreign airlines after his move to Cambodia is irrelevant

26  to the constitutional analysis.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1  affects commerce by reducing people's willingness to travel to unsafe areas of the

2  country).

3  **III.    EX POST FACTO PRINCIPLES ARE VIOLATED UNDER THE GOVERNMENT'S INTERPRETATION OF THE STATUTE.**

4  This Court should reject the Government's arguments that this prosecution does

5  not violate the Ex Post Facto Clause, U.S. Const. Art. I, Sec. 10.

6  The Government agrees Mr. Jackson last traveled in foreign commerce in 2001,

7  Government's Response at 2, 28-29, but argues the ex post facto clause is not violated

8  because "what matters" is the illicit conduct occurred after April 30, 2003, the effective

9  date of § 2423(c).  This argument flies in the face of the plain language of the statute

10  which states that,

11  

12  > [a]ny United States citizen . . . who travels in foreign commerce, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

13  As the Government acknowledges, "Congress does mean what it says; " the "best

14  evidence" of Congressional intent is the text of the statute itself.  <u>See</u> Government's

15  Response at 14.  The language of the statute melds  "travels and engages in illicit sexual

16  conduct" into a single substantive element.  Congress deliberately chose to use the

17  present tense "travels" and "engages" to describe the conduct proscribed by the statute.

18  The plain language of the statute unambiguously describes acts which occur in temporal

19  proximity or which occur at the same time.  As neither "travels" nor "engages in illicit

20  conduct" alone, constitute a federal crime, the language of the statute plainly requires

21  that both substantive facts be considered together and that both facts have occurred after

22  April 30, 2003.  If Congress had intended the statute to apply to defendants who had

23  "traveled" prior to April 30, 2003, the statute would have so stated.  Congress would

24  have worded the statute to state "any United States citizen . . . who travels <u>or has</u>

25  <u>traveled</u> in foreign commerce, and <u>subsequently</u> engages in any illicit sexual conduct . .

26  

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 10

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1    ."

2    There was little discussion by Congress regarding the amendment of Title 18 to

3    include § 2423(c).  However, in discussing previous legislation on which the amendment

4    was based, Congress noted that "[t]his legislation will close significant loopholes in the

5    law that persons who travel to foreign countries seeking sex with children are *currently*

6    using to their advantage in order to avoid prosecution."  H.R. Rep. No. 107-525, at 2

7    (2002) (emphasis added).  Prior to April 30, 2003, it was a crime to specifically travel in

8    foreign commerce with the "purpose of engaging in any illicit sexual conduct" under 18

9    U.S.C. § 2423(b).  It is apparent that Congress intended to prospectively close the

10   "loophole" for future travelers rather than punishing those, such as Mr. Jackson, who

11   traveled long before the statute's enactment.  To interpret the statute otherwise would not

12   only run afoul of the Constitution but would lead to absurd results dictated by a

13   prosecutor's virtually unlimited discretion. The plain language of the statute leads to the

14   inescapable conclusion that this prosecution violates the Ex Post Facto Clause.

15   The Government's contention that "travels" is not a substantive element and

16   "merely jurisdictional" is a desperate attempt to support its argument that for Ex Post

17   Facto purposes, "when the travel occurred is irrelevant."  Government's Response at 29.

18   The fact that "travels in foreign commerce" provides the federal jurisdictional basis for

19   the statute does not render it a non-substantive element.  When a question of Federal

20   subject matter jurisdiction is intermeshed with questions going to the merits, the issue

21   must be determined by the jury at trial. See  United States v. Nukida, 8 F.3d 665, 670

22   (9th Cir. 1993) citing to United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir.

23   1987).  Section 2423(c) requires the Government to prove to a jury beyond a reasonable

24   doubt that a defendant "travels and engages in any illicit sexual conduct."  Failure to

25   prove that the defendant "travels and engages," results in failure to prove a violation of

26   the statute.   A prosecution under § 2423(c) is clearly a case where the jurisdictional

REPLY TO GOVERNMENT'S RESPONSE TO                    **FEDERAL PUBLIC DEFENDER**
DEFENDANT'S MOTION TO DISMISS INDICTMENT             **1601 Fifth Avenue, Suite 700**
*(Gary E. Jackson)* – CR03-4986FBD – 11             **Seattle, Washington  98101**
                                                     **(206) 553-1100**

1  question is a substantive element of the crime.

2          The element of "travels in foreign commerce" is not inconsequential and cannot

3  be disregarded as the Government contends.  Rather, as discussed above, it is a key

4  element which the Government must prove occurred at the same time as the element of

5  illicit conduct.  As such, both the travels and engages in illicit conduct elements must

6  occur after April 30, 2003.  The Ex Post Facto Clause is violated in this case.

7          The Government also erroneously contends that since § 2423(c) is "concerned

8  with a continuing offense" the Ex Post Facto Clause is not violated.  This argument

9  hinges on the erroneous view that "travels in foreign commerce " is not a substantive

10 element and thus when a defendant "travels" is irrelevant.  Government's Response at

11 28-29.  As discussed above, the plain language of the statute requires that the unified

12 elements of travel and illicit conduct both have occurred after April 30, 2003.  "Travels"

13 is a substantive element and cannot be disregarded as argued by the Government.

14         Additionally, there is nothing in the plain language of § 2423(c) that supports the

15 notion that the statute concerns continuing offenses.  The statute contains no language

16 concerning schemes, continuing plans, conspiracies or engaging in any criminal

17 enterprise.  The "travels" element does not involve or require any planning, criminal

18 intent, or scheme to commit illicit acts, and stands in sharp contrast to 18 U.S.C. §

19 2423(b) which criminalizes "travel for the purpose of engaging in any illicit sexual

20 conduct."  Rather the statute criminalizes an individual's conduct in a foreign country

21 regardless of the plan or intent the individual had formed prior to or during travel in

22 foreign commerce.  Thus the language of § 2423(b) clearly establishes that the statute

23 does not concern a continuing offense.

24         Further, the indictment in this case alleges no scheme, plan, enterprise or

25 conspiracy to travel in foreign commerce with criminal intent, or that Mr. Jackson

26 traveled in foreign commerce with the intent to engage in illicit sexual conduct.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 12

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

Ultimately, in order to avoid an Ex Post Facto violation, the Government's argument is to delete the "travels" element and to rewrite § 2423(c) to read that it is a federal offense for a United States citizen to engage in any illicit sexual conduct in a foreign country.

Finally, the Government argues § 2423(c) does not violate the Ex Post Facto Clause because its "regulatory scheme" is like the scheme in 18 U.S.C. § 922(g). Government's Response at 29.  However, § 922(g) and the cases addressing it, support Mr. Jackson's position, not the Government's.

First, the language used in § 922(g) clearly establishes that the statute applies to guns which have traveled in interstate commerce prior to the enactment of the statute. Unlike the present tense language used in § 2423(c), Congress in drafting § 922(g) addressed travel in interstate or foreign commerce in both the present and the past tenses. Section 922(g) states in pertinent part

> It shall be unlawful for any person . . . to ship or transport in interstate or or foreign commerce, or possess in or affecting commerce, any firearms or ammunition; to receive any firearm or ammunition which has been shipped or transported in interstate commerce or foreign commerce.

The plain language of § 922(g) makes clear that Congress intended it to apply to firearms which had been shipped or transported prior to the statute's effective date.

Second, the Government's contention that § 922 was intended to regulate possession by prohibited persons not when firearms traveled in interstate commerce is contrary to powers delegated to Congress under the Constitution and Supreme Court cases construing Congress' authority to regulate firearms under the Commerce Clause. See Government's Response at 29.  The Supreme Court has made it clear that the Commerce Clause allows Congress, under statutes such as § 922, to regulate firearms that have an impact on interstate commerce, not merely the person who possesses the firearm.  A person who possesses a firearm does not commit a federal offense unless the firearm has an explicit connection with or effect on interstate commerce.

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 13

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1        In <u>United States v. Lopez</u>, <u>supra</u> the Supreme Court discussed how a Federal

2    statute which does not contain a requirement that possession of a firearm be connected to

3    interstate commerce would exceed Congress' authority under the Commerce Clause, Art.

4    I § 8, cl. 3.  That case addressed 18 U.S.C. § 922(q) which made it a crime "for any

5    individual to possess a firearm at a place that the individual knows, or has reason to

6    believe is a school zone." <u>Id.</u> 514  at 551.  The Supreme Court stated that "§ 922(q)

7    contains no jurisdictional element which would ensure, through a case-by-case inquiry,

8    that the firearm possession in question affects interstate commerce." <u>Id.</u> at 561.  The

9    Supreme Court found § 922(q) unconstitutional because "possession of a gun in a local

10   school zone is in no sense an economic activity that might . . . substantially affect any

11   sort of interstate commerce." <u>Id.</u> at 567.  The <u>Lopez</u> decision clearly shows that § 922

12   intended to regulate firearms which traveled or affected interstate commerce, <u>not</u>

13   possession by prohibited persons.  <u>See</u> <u>United States v. Stewart</u>, 348 F.3d 1132 (9th Cir.

14   2003) (Conviction of defendant for possession of machine gun he made himself was an

15   unlawful extension of Congress' commerce powers since he did not obtain the gun by

16   using the channels of commerce, and the possession did not have a substantial affect on

17   interstate commerce).

18        The Government's contention that "regulatory scheme" contained in § 922

19   supports the conclusion that Congress may, under the Commerce Clause, focus solely on

20   the acts of an individual, rather than the travel and "criminalize acts taking place entirely

21   outside of the United States" is meritless and should be rejected by this Court.

22   //

23   //

24   //

25   //

26

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 14

1  **IV.   EVEN ASSUMING THAT THE PROVISION COULD BE DEEMED TO**
2  **FALL UNDER CONGRESS' AUTHORITY TO REGULATE THE**
   **CHANNELS OF FOREIGN COMMERCE, GRAVE CONSTITUTIONAL**
3  **DOUBT CAN ONLY BE AVOIDED BY CONSTRUING THE TERM**
   **"TRAVELS IN FOREIGN COMMERCE" TO MEAN THAT THE**
   **SUBSTANTIVE CRIME OF SEX WITH A MINOR OCCURRED DURING**
4  **THE FOREIGN TRAVEL.**

5      The government asserts at length that Congress intended the statute to be applied

6  extraterritorially and contends that Mr. Jackson "ignores" this intent in arguing that the

7  guiding principles of statutory construction dictate that the statute must be narrowly

8  construed in order to avoid constitutional doubt and to comply with the rule of lenity.

9  See Government's  Response at 16 and Motion to Dismiss at 18-19.  Again, the

10 government has confused two separate issues: the issue of extraterritorial application of a

11 federal statute and the proper statutory construction of the statute.

12     With respect to the issue of extraterritorial application, it is Mr. Jackson's position

13 that even assuming that the limit on the extraterritorial application of a federal statute is

14 overcome, the jurisdictional reach of § 2423(c) extraterritorially violates international

15 law principles, would be unreasonable and violates the Fifth Amendment Due Process

16 Clause as well as ex post facto principles.  See Motion to Dismiss at 24-29 and below.

17     On the completely separate issue of statutory construction, because the term

18 "travels in foreign commerce" in relation to the prohibited sex acts is ambiguous, the

19 fundamental principles of statutory construction apply.  As made clear by the parties'

20 differing interpretations of the statute, the statute's plain language is ambiguous.

21 Although the statutes specifically uses the term "travels" and "engages," the government

22 states that the elements are that (1) the "defendant trave<u>led</u> in foreign commerce"; (2) the

23 defendant engag<u>ed</u> in illicit sexual conduct; and (3) the defendant was a United States

24 citizen or permanent resident.  Government's Response at 31.  It argues that the statute's

25 plain meaning and the legislative history support the interpretation that it applies to those

26 "who engage in illicit sexual conduct who travel in foreign commerce (innocent or

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 15

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1  otherwise)." Government's Response at 17.  Without further illuminating what this

2  means, the government further asserts that the Court in interpreting the statute should

3  disregard the travel "component" of the statute because it is "merely jurisdictional" and

4  focus only on the "act of engaging in illicit sexual conduct that is the crime, not a

5  defendant's travel."  Government's Response at 17 n. 16.

6         But as discussed above, at pages 9-10, the element of "travels in foreign

7  commerce" is not "*merely* jurisdictional" but rather is an element that the government

8  must prove beyond a reasonable doubt to ensure that what the defendant did was within

9  the power of Congress to regulate.  United States v. Rodia, 194 F.3d 465, 473 (3d Cir.

10  1999); see also Lopez, 514 U.S. at 560 (§ 922(q) contains no jurisdictional element

11  which would ensure, through case-by-case inquiry, that the firearm possession in

12  question affects interstate commerce).  Here,  the statute is constitutional only if it

13  regulates channels of commerce.  See, e.g., Bredimus, 352 F.3d at 207 (§ 2423(b)

14  constitutional as a "channels" regulation because it punishes crossing the state or

15  international line with criminal intent).  The government's interpretation of the statute

16  raises grave constitutional doubt because as read by the government, it does not seek to

17  regulate prohibited *movement* or obstruction to movement in foreign commerce.  This

18  interpretation is unsupportable under existing Supreme Court precedent.  See Hoke v.

19  United States, 227 U.S. 308, 320 (1913) (With respect to travel, Congress has Commerce

20  authority to regulate "transportation obtained or aided, or transportation induced in

21  [foreign] commerce, for . . . immoral purposes[.])"  The only constitutional manner in

22  which the Court can interpret the statute is to require that the unlawful acts occur during

23  the transportation or use of a federal channel.

24         A review of the statutory language also supports a narrow construction.  The

25  statutory language is ambiguous when viewed outside the context of the purpose of the

26  statute.  It is apparent that the "travels in foreign commerce" element means movement

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 16

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1   by an individual from the United States to a certain country.  However, the statutory

2   language does not clarify when the illicit sexual conduct must occur in relation to that

3   travel.  Nor does the structure of the statute suggest the correct interpretation.  For

4   example, the statute does not employ the word  "thereafter" or subsequent to after the

5   phrase "travel<u>s</u> in foreign commerce."  Rather, a plain reading of the statute suggests that

6   the illicit act and the travel must occur at the same time or in close proximity to one

7   another.  Again, that is the only constitutional manner in which the statute can be read.

8   <u>See</u> <u>Perez v. United States</u>, 402 U.S. 146, 150 (1971) (Congress has authority to prevent

9   the misuse of channels of interstate or foreign commerce); <u>Jones</u>, 529 U.S. at 857

10   ("Given the concerns brought to the fore in Lopez, it is appropriate to avoid the

11   constitutional question that would arise were we to read § 844(I) broadly).

12       The purpose of the statute also supports a narrow reading of the statute to apply

13   only to those who travel and engage in the illicit sex act during the use of the channels of

14   commerce.

15       Thus, assuming that this Court were to hold that § 2423(c) is a valid exercise of

16   Congress's commerce power, given the ambiguity of the phrases "travels in foreign

17   commerce, *and* engages in any illicit sexual conduct" which the legislature has chosen

18   not to define, the only manner in which the statute can be interpreted to avoid serious

19   constitutional doubt, is to require, as with similar "channels" statutes, that the illicit

20   sexual conduct occur during the travel from the United States to a foreign country.

21       Mr. Jackson last traveled in foreign commerce in 2001, nearly two years before

22   the effective date of § 2423(c).  His travel in 2001 was lawful.  The illicit acts the

23   Government relies on in this case occurred in June 2003.  There is no connection

24   between Mr. Jackson's lawful travel in 2001 and the acts in 2003; the statute cannot be

25   constitutionally applied to him and the indictment must be dismissed.

26

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 17

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

**V.     EVEN ASSUMING CONSTITUTIONALITY OF THE STATUTE, JURISDICTION OVER THIS PROSECUTION VIOLATES INTERNATIONAL LAW AND THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE.**

Whether Congress has exercised its authority to enforce the laws of the United States outside the country's territorial boundaries is a matter of statutory construction. Even assuming however that Congress intended the statute to be applied extraterritorially, as the government acknowledges, that application cannot violate international law or due process.  United States v. Vasquez-Velasco, 15 F.3d 833, 839 (9th Cir. 1994); United States v. Davis, 905 F.2d 245, 249 n. 2 (9th Cir.), cert. denied, 498 U.S. 1047 (1991).  If § 2423(c) violates international law, this prosecution must be dismissed.

International law permits the exercise of extraterritorial jurisdiction only in certain circumstances.  The government argues that extraterritorial application of § 2423(c) not only is valid under the United States Constitution but also does not violate the nationality principle under international law.  But as pointed out by Mr. Jackson at page 21 of his motion, the nationality principle has seldom been relied upon as the sole basis for an exercise of such jurisdiction.  Rather, it is invoked primarily in conjunction with the objective territorial or protective jurisdiction principle to assert jurisdiction over American nationals whose acts outside the country produced, or were intended to produce, detrimental effects within this country.  For example, the government cites to United States v. Walczak, 783 F.2d 852 (9th Cir. 1986) as a case treating the nationality principle as a sufficient basis for the exercise of jurisdiction.  But in Walczak, the Court found three bases for asserting jurisdiction (including the nationality principle) over Walczak, who was charged under 18 U.S.C. § 1001 with making a false statement on a customs form, including the fact that the language of the statute literally applies to false statements made on custom forms, which is in the jurisdiction of the United States,

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 18

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1  without regard to the place where the offense occurred.  <u>See also</u>, <u>United States v.</u>

2  <u>Plummer</u>, 221 F.3d 1298 (11th Cir. 2000) (upholding extraterritorial application of 18

3  U.S.C. § 545, as well as the Trading With the Enemy Act, to boat headed to United

4  States loaded with Cuban cigars); <u>United States v. Hill</u>, 279 F.3d 731, 740 (9th Cir.

5  2002) (cited by government at page 20 of response) (extraterritorial jurisdiction for

6  evasion of child support payments appropriate under territorial, nationality, and passive

7  personality principles); <u>Thomas</u>, 893 F.2d at 1069 (upholding extraterritorial application

8  of 18 U.S.C. § 2251(a) to defendant who took pornographic photos of children in

9  Mexico and brought them to United States).

10       Further, as the government also acknowledges, even if the nationality principle by

11  itself were somehow regarded as an appropriate basis for the extraterritorial application

12  of § 2423(c), this Court must also find that its application extraterritorially would be

13  reasonable and that it would not violate the Fifth Amendment Due Process Clause, and

14  thus would not be "arbitrary and fundamentally unfair."

15       The government asserts that even if a sufficient "nexus were not established

16  solely on the basis of Mr. Jackson's citizenship, his ties with the United States would

17  satisfy this requirement.  But an examination of the facts in this case demonstrates the

18  unreasonableness and unfairness of applying the statute to Mr. Jackson.

19       Mr. Jackson lawfully left the United States with his partner in November of 2001,

20  to permanently live in Southeast Asia, some two years before the enactment of the

21  statute.  Mr. Jackson left no real or personal property in the United States and purchased

22  a permanent home for himself and his partner and his adopted Cambodian family in

23  Phnom Penh.  The only physical link Mr. Jackson maintained in the United States was a

24  joint account with Washington Mutual Bank, which he used as a repository for his

25

26

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 19

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

1   pension deposits.[6]

2          Most importantly, at the time of his move, sex with a Cambodian citizen was not

3   a federal crime.  Thus, Mr. Jackson had no knowledge that future acts against citizens in

4   his adopted country would subject him to federal jurisdiction (as opposed to punishment

5   in Cambodia).  As the government acknowledges, citing to <u>United States v. Vasarajs</u>,

6   908 F.2d 448, 448 (9th Cir. 1990), "[t]he maxim that ignorance of the law is no excuse

7   for committing a crime . . . *presupposes* a penal statute that adequately puts citizens on

8   notice of what is illegal."[7]  In fact, after the enactment of the statute, Congress directed

9   that the President ensure travelers are notified that "sex tourism" is now illegal.  22

10  U.S.C. § 7104(e)(1) directs that "The President, pursuant to such regulations as may be

11  prescribed, shall ensure that materials are developed and disseminated to alert travelers

12  that sex tourism (as described in subsections (b) through (f) of § 2423 of Title 18) is

13  illegal, will be prosecuted, and presents dangers to those involved.  Such materials shall

14  be disseminated to individuals traveling to foreign destinations where the President

15  determines that sex tourism is significant."  This statute did not take effect until

16  December 19, 2003, long after Mr. Jackson had moved to Cambodia.

17         Here, application of the statute extraterritorially to apply to individuals such as

18  Mr. Jackson who permanently moved from the United States years before the statute's

19  enactment is unreasonable and fundamentally unfair.

20  _____

21         [6] The government incorrectly asserts that Mr. Jackson received military benefits
22  suggesting that he was living in Cambodia using federal funds.  Mr. Jackson's pension however
    was not from the military but from his employment as civilian marine carpenter.

23         [7] The government also cites to <u>United States v. Moncini</u>, 882 F.2d 401 (9th Cir. 1989)
24  for the proposition that Mr. Jackson should have known that he would be subject to prosecution
    in the United States for his conduct because the acts were "heinous and condemned."  The
25  issue however is not whether Mr. Jackson's acts are punishable but whether those acts are
    *federal* crimes.  <u>Moncini</u> is distinguishable because it, unlike here, involved the mailing of
26  child pornography *into* the United States.

REPLY TO GOVERNMENT'S RESPONSE TO                           **FEDERAL PUBLIC DEFENDER**
DEFENDANT'S MOTION TO DISMISS INDICTMENT                    **1601 Fifth Avenue, Suite 700**
*(Gary E. Jackson)* – CR03-4986FBD – 20                     **Seattle, Washington  98101**
                                                            **(206) 553-1100**

## VI.   CONCLUSION.

The Constitution empowers the judiciary to determine the limits of Congress's power.  Section 2423(c) goes far beyond Congress's power under the Commerce Clause. Instead of regulating the channels of commerce, it makes acts committed entirely in a foreign country a federal crime regardless of whether the channels of commerce have been misused or whether the act has any connection to travel in foreign commerce.  Even if this Court were to uphold  the unprecedented expansion of Congress's Commerce Clause power which would follow from sustaining this statute, the Ex Post Facto and Due Process Clauses would be violated.  The plain language of the statute makes it crystal clear that this statute applies only to whosoever "travels" and "engages in illicit sexual conduct" after the statute's effective date, April 30, 2003.  Mr. Jackson respectfully requests that the Court dismiss the indictment based on the foregoing arguments and those set forth in the original motion to dismiss.

DATED this 1st day of July, 2004.

Respectfully submitted,


s/ Brian Tsuchida
Bar No. 14886
Assistant Federal Public Defender
Attorney for Gary Evans Jackson
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Brian_Tsuchida@fd.org

s/ Vicki W.W. Lai
Bar No. 23935
Research & Writing Attorney
Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
Tel. (206) 553-1100
Fax (206) 553-0120
Vicki_Lai@fd.org

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 21

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2004, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following: Susan B. Dohrmann, Assistant United States Attorney, 601 Union

Street, Suite 5100, Seattle, WA 98101-3903; and John Lulejian, Assistant United States

Attorney, 601 Union Street, Suite 5100, Seattle, WA 98101-3903.

> s/ Brian Tsuchida
> Bar No. 14886
> Assistant Federal Public Defender
> Attorney for Gary Jackson
> Federal Public Defender
> 1601 Fifth Avenue, Suite 700
> Seattle, WA 98101
> Tel. (206) 553-1100
> Fax (206) 553-0120
> Brian_Tsuchida@fd.org

REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT
*(Gary E. Jackson)* – CR03-4986FBD – 22

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington  98101**
**(206) 553-1100**